IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DIGITAL CONTENT PROTECTION, L.L.C., a Delaware limited liability company, and WARNER BROS. ENTERTAINMENT INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> FREEDOM USA, INC. d/b/a AVADIRECT CUSTOM COMPUTERS d/b/a ANTARESPRO, an Ohio corporation, and ALEX SONIS, an individual, <br><br> Defendants. | Case No. <br><br> Judge <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF BASED ON VIOLATIONS OF DIGITAL MILLENNIUM COPYRIGHT ACT AND THE COPYRIGHT ACT – JURY TRIAL DEMANDED** |

Plaintiffs Digital Content Protection, L.L.C. ("DCP") and Warner Bros. Entertainment Inc. ("Warner Bros.") hereby allege as follows:

**NATURE OF THE ACTION**

1. This is an action seeking damages, injunctive and other equitable relief, and attorneys' fees arising out of Defendants' manufacture, importation, offering to the public, provision of, or otherwise trafficking in devices primarily designed to or produced for the purpose of circumventing the effective technological measure known as High-Bandwidth Digital Content Protection ("HDCP").

2. HDCP is built into nearly all modern electronic equipment, including set-top boxes, DVD players, personal computers, game consoles, and display devices like high definition televisions ("HDTVs") (collectively "Home Entertainment Devices").  HDCP is a

critical protection technology that protects access to and against copying of copyrighted content. HDCP is a technological measure that effectively controls access to copyrighted content pursuant to 17 U.S.C. § 1201(a)(3)(B) and effectively restricts the exercise of a right of a copyright owner (including reproduction and distribution) pursuant to 17 U.S.C. § 1201(b)(2)(B).

3.     DCP is the licensor of HDCP; DCP's licensing of HDCP generates remuneration for DCP.  Through its licensing of HDCP, DCP controls access to copyright-protected content and controls a technological measure that protects such copyrighted content.

4.     Content owners, such as Warner Bros., can and do obtain licenses from DCP to use HDCP, or to cause or permit HDCP to be used, to protect their copyrighted content during distribution and transmission.  By implementing HDCP in this manner, Warner Bros. and other content owners protect their copyrighted content from unauthorized access, copying, and use.

5.     The accused devices ("Circumvention Devices") circumvent HDCP in violation of the Digital Millennium Copyright Act ("DMCA"), codified at 17 U.S.C. § 1201(a)(2) and (b)(1).  Defendants' distribution and sale of the Circumvention Devices harms DCP by unlawfully undermining HDCP's access and copy-protection technology and by causing DCP to lose – or threatening DCP's loss of – licensing revenue, entitling DCP to the relief sought herein.

6.     The Circumvention Devices further enable HDCP-protected high-quality home entertainment products, including movies, television, and video games (collectively, "Home Entertainment Products"), to be displayed on non-HDCP devices such that users of the Circumvention Devices can engage in unauthorized copying in violation of the Copyright Act, thereby entitling Warner Bros. to the relief under the Copyright Act.

1321060

7.     By rendering Warner Bros.' valuable intellectual property vulnerable to unauthorized access, copying, and use, the Circumvention Devices violate § 1201 of the DMCA, further entitling Warner Bros. to relief under the DMCA.

## THE PARTIES

8.     Plaintiff DCP is a Delaware limited liability company headquartered in Beaverton, Oregon.

9.     Plaintiff Warner Bros. is a Delaware corporation headquartered in Burbank, California.

10.     Defendant Freedom USA, Inc. d/b/a AVADirect Custom Computers d/b/a AntaresPro (hereinafter "Freedom USA") is an Ohio corporation with its registered principal place of business at 14915 Woodworth, Cleveland, Ohio 44110.

11.     Defendant Alex Sonis is an individual believed to reside in Twinsburg, Ohio. Defendant Sonis has consented to the jurisdiction of this Court and to accept service of process at 1750 Highland Road, Suite 4, Twinsburg, Ohio 44087.

12.     Defendants are responsible for the manufacturing, importation, marketing, provision, and/or trafficking of Circumvention Devices in this District as well as throughout the United States.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over the claims relating to the DMCA (17 U.S.C. § 1201) pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (copyrights).

14.     This Court has personal jurisdiction over Defendant Sonis at least because he has consented to the jurisdiction of this Court, resides in this state, is doing business in this state,

1321060

and has advertised, offered for sale, and, on information and belief, sold unlawful products in this state.

15. This Court has personal jurisdiction over Defendant Freedom USA at least because Defendant Freedom USA is headquartered in this state, is doing business in this state, and has advertised, offered for sale, and, on information and belief, sold unlawful products in this state.

16. Venue is proper in this District under 28 U.S.C. § 1391(b)(3) and (c)(3).

## FACTS COMMON TO ALL CLAIMS

### The HDCP Specification

17. The HDCP Specification, which DCP licenses to others, is implemented in products used in the final part of a chain of content protection technologies. These products protect the last stage in the distribution process: the transmission of content from devices like set-top boxes, DVD players, computers, and game consoles over digital interfaces to display devices like HDTVs. HDCP effectively protects the content by using authentication and encryption techniques as the content travels over the digital interface between two devices. The role of HDCP is to prevent unauthorized access to copyrighted content, as well as interception and copying or other unauthorized use of the content as it travels over the bit stream of the digital interface to the display.

18. HDCP operates entirely over certain digital interfaces known as HDCP-protected interfaces. HDCP-protected interfaces include High-Definition Multimedia Interface (HDMI), an interface widely adopted by HDTV manufacturers and other consumer electronics device manufacturers; Digital Visual Interface (DVI), a video interface that provides high quality visual and digital displays on devices like flat panel LCD computer displays and digital

1321060

projectors; DisplayPort, a digital display interface designed to operate primarily between a computer and its display or a home theater system; Gigabit Video Interface (GVIF), a digital video serial interface designed primarily for automotive applications; and Unified Display Interface (UDI), a digital video interface specification designed primarily for computer monitor and video card manufacturers.

19.     HDCP-protected systems can include three types of devices: sources, sinks, and repeaters.  Sources – such as set-top boxes, DVD and Blu-Ray players, and computer video cards – send content to be displayed..  Sources have an HDCP/HDMI transmitter.  Sinks – such as televisions and digital projectors – render content for display so it can be viewed, and include.  Sinks also have one or more HDCP/HDMI receivers.  Repeaters – such as home theater audio-visual receivers – accept content, decrypt it, then re-encrypt and re-transmit the data.  Repeaters, too, have both HDMI inputs and outputs.

20.     HDCP sources, sinks, and repeaters can be connected together in a tree-shaped topology that enables many different combinations of devices.  A common home theater tree-shaped topology includes three sources (Blu-Ray player, set-top box, and console) connected to a repeater (audiovisual receiver); the repeater is connected to a sink (television).  HDCP protects all communications among the devices in the topology.

21.     HDCP uses authentication and encryption to protect the communications among devices in a given topology.  Before HDCP-protected data is sent, the transmitting device initiates an authentication process to confirm that the receiving device is authorized to receive the data.  The authentication process involves several steps by which the receiving device demonstrates that it holds valid, secret device keys (without publicly revealing the keys), i.e., the receiving device demonstrates that it is an HDCP-compliant device.  Once the receiving

device is authenticated, the transmitter encrypts the data stream and sends it to the receiving device.  This encrypted content can only be decrypted by the receiving device via its HDCP cipher engine and its copy of the session key, i.e., only an HDCP-compliant device can decrypt HDCP-protected content.  Encryption prevents "eavesdropping" and is critical to safeguarding valuable content from unauthorized copying and use.

### Plaintiff DCP, Its Licensing of the HDCP Specification, and the Harm Caused by Defendants' Trafficking in the Circumvention Devices

22.     Plaintiff DCP licenses HDCP to nearly 400 leading companies in the digital entertainment value chain.  HDCP is widely embraced by consumer electronics manufacturers, who license it from DCP to implement the HDCP Specification pursuant to the HDCP License Agreement ("Adopter Agreement").  Content owners, like Warner Bros., can also license HDCP from DCP, causing or permitting HDCP's use to protect their copyrighted content during distribution and transmission pursuant to the HDCP Content Participant Agreement ("Content Participant Agreement").  Consumer electronics manufacturers pay a licensing fee to DCP under the Adopter Agreement.  Content owners pay an annual administration fee to DCP under the Content Participant Agreement.  These fees generate remuneration for DCP.

23.     Each licensee under the Adopter Agreement must implement HDCP products that comply with the specification and license agreement and construct their devices so that they interoperate with other products over HDCP-protected interfaces.  HDCP allows content owners, such as major motion picture studios like Warner Bros., to protect their copyrighted content, and therefore is an important tool for content owners seeking to protect their copyrighted content from unauthorized access, copying, and use.

24.     The Circumvention Devices enable users to gain unauthorized access to HDCP-protected content, and enable HDCP-protected content to be displayed on non-HDCP compliant

devices, rendering the content vulnerable to unauthorized copying.  By making copyrighted content vulnerable to unauthorized access and use, the Circumvention Devices decrease the value of the HDCP Specification for DCP, its licensees, and content owners; and deprive DCP of fees.

25.     Defendants have not obtained a license from DCP.  The Circumvention Devices do not follow the HDCP Specification and do not comply with the Adopter Agreement. Further, the Circumvention Devices are not authorized by DCP or by Warner Bros.

26.     Through HDCP, DCP controls access to copyright-protected content, and through the Adopter Agreement, DCP controls a technological measure that protects such copyrighted content.  Accordingly, DCP is a person injured by Defendants' trafficking in the Circumvention Devices in violation of § 1201 of the DMCA.

### Plaintiff Warner Bros., Its Home Entertainment Products, and the Harm Caused by Defendants' Trafficking in the Circumvention Devices

27.     Warner Bros. is a world-famous entertainment company and a global leader in the creation, production, distribution, licensing, and marketing of all forms of creative content, including movies, television, and video games.

28.     Warner Bros. owns the copyrights to an extensive library of Home Entertainment Products: more than 6,650 feature films, 50,000 television titles, and 14,000 animated titles, including over 1,500 classic animated shorts.  Its catalog includes the hugely popular *Harry Potter* and *Lord of the Rings* movie series, cartoon megabrands like Looney Tunes and Scooby-Doo, and movie classics like the *Wizard of Oz*.

29.     Warner Bros. owns exclusive rights under the Copyright Act to its Home Entertainment Products, including the rights to reproduce, distribute, or license the reproduction and distribution of its Home Entertainment Products in video format in the United States.

1321060

30.     The expression and other distinctive features of Warner Bros.' home entertainment products are wholly original with Warner Bros., its licensors and/or assignors and, as fixed in various tangible media, are copyrightable subject matter under the Copyright Act.

31.     Warner Bros., or any predecessor in interest, has complied in all respects with the laws governing copyright and has secured the exclusive right and privileges in and to its Home Entertainment Products.  Warner Bros. holds certificates of registration and/or secured exclusive licenses or assignments to reproduce, distribute, and license its Home Entertainment Products throughout the United States.

32.     Warner Bros.' Home Entertainment Products have been manufactured, sold, and/or otherwise distributed in conformity with the provisions of the copyright laws.  Warner Bros. and those acting under its authority have complied with their obligations under the copyright laws and Warner Bros., in its own right or as a successor-in-interest, has at all times been and still is the sole proprietor or otherwise authorized to enforce all right, title and interest in and to the copyrights or to enforce its exclusive right for home video distribution in all of its Home Entertainment Products.

33.     Warner Bros. provides its Home Entertainment Products to consumers through tangible media like DVDs and Blu-Ray discs, as well as through digital transmission mediums like pay-per-view, electronic sell-through, transactional video-on-demand, subscription-video-on-demand, wireless, and the like.

34.     Warner Bros. actively seeks to offer its Home Entertainment Products in the most cutting-edge manner available while still vigorously protecting its intellectual property rights in those products.  One way in which Warner Bros. has sought to achieve this goal is by entering into a Content Participant Agreement with DCP, under which Plaintiff DCP grants Warner Bros.

1321060

a non-exclusive and non-transferable license to use HDCP, and to cause or permit HDCP to be used, to protect Warner Bros.' content during distribution and transmission. HDCP's implementation thus protects Warner Bros.' copyrighted content from unauthorized access, copying, and use.

35. Warner Bros. requires the use of HDCP in many of its distribution licenses for pay-per-view, video-on-demand and other premium digital content delivery services to which Warner Bros. licenses its film and television programming.

36. When HDCP is circumvented, the risk of unauthorized copying and redistribution of the content formerly protected by HDCP is dramatically increased. This damages Warner Bros. because the unauthorized and uncompensated reproduction and distribution of Warner Bros. copyrighted content decreases the demand for such content through legitimate distribution channels, such as home video, video-on-demand, premium broadcast channels and the like.

37. By circumventing HDCP, the Circumvention Devices render Warner Bros.' Home Entertainment Products vulnerable to unauthorized access, copying, and use. Accordingly, Warner Bros. is a person injured by Defendants' trafficking in the Circumvention Devices in violation of § 1201 of the DMCA.

**Defendant Sonis's UnlawfulActivities**

38. Defendant Sonis has manufactured, imported, offered to the public, provided, or otherwise trafficked in a Circumvention Device called a "SIIG C-H20511-S1 HDMI to YPbPr/VGA & Audio Conv" (hereinafter, "the Sonis Circumvention Device") through one or more listings on eBay under the eBay user ID "antaresprocom," including a listing identified by the item number 221064606194. Sonis's actions with respect to this device enable HDCP-protected content to be displayed on non-HDCP compliant devices, rendering the content

vulnerable to unauthorized copying and redistribution, which impairs DCP's ability to protect copyrighted content, and in turn jeopardizes DCP's realization of licensing revenues for HDCP. Sonis's actions further render Warner Bros.' copyrighted content vulnerable to unauthorized access, copying, and use.

39.     The Sonis Circumvention Device has one HDMI input and one DVI input, and a single analog VGA video output that can also provide analog component video.  The Sonis Circumvention Device takes HDCP-protected, copyrighted content from either digital input and displays that content to a non-HDCP analog interface, enabling the protected content to be displayed on a non-HDCP device.

40.     In particular, the Sonis Circumvention Device transmits HDCP-protected content to non-HDCP devices by performing HDCP decryption, without the authorization of either the copyright owner of the HDCP-protected content or DCP, and by avoiding, bypassing, removing, deactivating, and/or impairing the HDCP authentication process.  The Sonis Circumvention Device does not re-encrypt HDCP-protected content after it is transmitted to a non-HDCP device, rendering the content "in the clear" and therefore vulnerable to unauthorized access and copying and redistribution.

41.     By decrypting HDCP and avoiding, bypassing, removing, deactivating, and/or impairing the HDCP authentication process, the Sonis Circumvention Device circumvents HDCP, allowing users of the device to gain unauthorized access to HDCP-protected content, and allowing HDCP-protected content to be displayed on non-HDCP-compliant devices that allow unauthorized copying of the content.  Put another way, by enabling those who use the device to transmit HDCP-protected, copyrighted content over HDCP-protected interfaces to non-HDCP devices, such as analog displays, the Sonis Circumvention Device circumvents a

technological measure controlled by DCP, and renders Warner Bros.' copyrighted content vulnerable to unauthorized access, copying, and use.

42.     Sonis has not signed an Adopter Agreement, and the Sonis Circumvention Device, which does not follow the HDCP Specification, does not comply with the Adopter Agreement at least because the Sonis Circumvention Device enables high-definition video sources to transmit HDCP-protected content to non-HDCP enabled receiving devices, thereby enabling users of the device to gain unauthorized access to content and to make unauthorized copies of the decrypted content.

43.     Defendant Sonis is well aware of DCP's and Warner Bros.' rights, the extent of the harm to DCP's and Warner Bros.' rights caused by the Sonis Circumvention Device, and DCP's and Warner Bros.' enforcement efforts.  On September 20, 2012, DCP and Warner Bros. submitted an "Electronic Notice of Claimed Infringement" under the eBay Verified Rights Owner ("VeRO") Program, reporting Defendant Sonis's listing on www.ebay.com for the Sonis Circumvention Device as a device for sale in the United States that bypasses HDCP anti-circumvention technology in violation of the DMCA's anti-circumvention provisions.  The listing for the Sonis Circumvention Device was removed by eBay on September 21, 2012. Defendant Sonis filed a counter-notification, pursuant to 17 U.S.C. § 512, on December 6, 2012, prompting institution of the instant Complaint.

44.     On information and belief, Defendant Sonis has derived significant profit and financial benefit from his involvement in the manufacture, importation, offering to the public, provision of, or otherwise trafficking in the Sonis Circumvention Device.  Defendant Sonis knew or should have known that the Sonis Circumvention Device circumvents HDCP causing

11

injury to DCP and Warner Bros., and Defendant Sonis's actions, despite warnings by DCP and Warner Bros., have been willful and deliberate.

### Defendant Freedom USA's Unlawful Activities

45.     On information and belief, Defendant Sonis works for or is otherwise affiliated with Defendant Freedom USA.

46.     Defendant Freedom USA manufactures, imports, offers to the public, provides, or otherwise traffics in the following Circumvention Devices through the website www.antarespro.com (collectively, "the AntaresPro.com Circumvention Devices"):

a.     A Circumvention Device called a "StarTech.com MNHD2VGAE Video Cable - Mini HDMI to VGA Adapter Converter for Digital Still Camera / Video Camera 1920x1080 1 x HDMI (Mini Type C) Male Digital Audio/Video 1 x HD 15 Female VGA Black," SKU # 7206069;

b.     A Circumvention Device called a "SABRENT HDMI TO VGA CONVERTER HDMI INPUT," SKU # 6974535;

c.     A Circumvention Device called a "SABRENT DA-HDRC - Sabrent HDMI to Composite RCA/S Video Converter Functions: Signal Conversion PAL, NTSC," SKU # 6891890;

d.     A Circumvention Device called a "SIIG CE-H21011-S1 - SIIG HDMI to VGA Converter with Audio Functions: Signal Conversion," SKU # 6843309;

e.     A Circumvention Device called a "SIIG CE-H20511-S1 Video Processor - HDMI/DVI to YPbPr/VGA & Audio Converter Functions: Video Conversion, Video Processing 1 Pack OEM," SKU # 1835343; and

1321060

       f.     A Circumvention Device called a "CE LABS HDMI TO COMPOSITE SCALER," SKU # 4992444.

47.     The AntaresPro.com Circumvention Devices take HDCP-protected, copyrighted content from a digital, HDMI input and display that content to an analog interface.  By enabling those who use the devices to transmit HDCP-protected, copyrighted content over HDCP-protected interfaces to non-HDCP devices, such as analog displays, the AntaresPro.com Circumvention Devices circumvent a technological measure controlled by DCP.  Defendant Freedom USA's actions with respect to these devices render the content vulnerable to unauthorized copying, which impairs DCP's ability to protect copyrighted content, and in turn jeopardizes DCP's realization of licensing revenues for HDCP.  Defendant Freedom USA's actions further render Warner Bros.' copyrighted content vulnerable to unauthorized access, copying, and use.

48.     The AntaresPro.com Circumvention Devices transmit HDCP-protected content to non-HDCP devices by performing HDCP decryption and by avoiding, bypassing, removing, deactivating, and/or impairing the HDCP authentication process.  The AntaresPro.com Circumvention Devices do not re-encrypt HDCP-protected content after it is transmitted to a non-HDCP device, rendering the content vulnerable to unauthorized access and copying.

49.     By decrypting HDCP and avoiding, bypassing, removing, deactivating, and/or impairing the HDCP authentication process, the AntaresPro.com Circumvention Devices circumvent HDCP, allowing users of the devices to gain unauthorized access to HDCP-protected content, and allowing HDCP-protected content to be displayed on non-HDCP-compliant devices that allow unauthorized copying of the content.

1321060

50.     Freedom USA has not signed an Adopter Agreement, and the AntaresPro.com Circumvention Devices, which do not follow the HDCP Specification, do not comply with the Adopter Agreement at least because the AntaresPro.com Circumvention Devices enable high-definition video sources to transmit HDCP-protected content to non-HDCP-enabled receiving devices, thereby enabling users of the devices to gain unauthorized access to content and to make unauthorized copies of the decrypted content.

51.     Defendant Freedom USA is well aware of DCP's and Warner Bros.' rights, the extent of the harm to DCP's and Warner Bros.' rights caused by the AntaresPro.com Circumvention Devices, and DCP's and Warner Bros.' enforcement efforts.  On December 10, 2012, DCP and Warner Bros. sent a letter to AntaresPro, a trading name of Defendant Freedom USA, notifying AntaresPro that the AntaresPro.com Circumvention Devices circumvent HDCP technology in violation of the DMCA anti-circumvention provisions.  In the December 10 letter, DCP and Warner Bros. demanded that AntaresPro immediately stop offering the devices for sale, and remove listings for the devices from www.antarespro.com.  As of the filing of this Complaint, AntaresPro continues to offer for sale all of the AntaresPro.com Circumvention Devices through listings on www.antarespro.com.

52.     On information and belief, Defendant Freedom USA has derived significant profit and financial benefit from its involvement in the importation of, marketing of, and/or trafficking in the AntaresPro.com Circumvention Devices.  Defendant Freedom USA knew or should have known that the AntaresPro.com Circumvention Devices circumvent HDCP causing injury to DCP and Warner Bros., and Defendant Freedom USA's actions, despite warnings by DCP and Warner Bros., have been willful and deliberate.

1321060

## CAUSES OF ACTION

### COUNT I
**Violation of the Digital Millennium Copyright Act [17 U.S.C. § 1201(a)(2)]
By All Plaintiffs Against All Defendants**

53.     Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54.     Defendants were and are actively engaged in the business of manufacturing, importing, offering to the public, providing, and/or otherwise trafficking in the Circumvention Devices.

55.     The Circumvention Devices descramble a scrambled work, decrypt an encrypted work, or otherwise avoid, bypass, remove, deactivate, or impair HDCP, without the authority of DCP or of Warner Bros.

56.     HDCP, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work.

57.     The Circumvention Devices are primarily designed or produced for the purpose of circumventing HDCP, a technological measure that effectively controls access to copyrighted works.

58.     The Circumvention Devices have no or only limited commercially significant purpose or use other than to circumvent HDCP, a technological measure that effectively controls access to copyrighted works.

59.     The Circumvention Devices are marketed by Defendants, or by another or others acting in concert with Defendants and with their knowledge, for use in circumventing HDCP, a technological measure that effectively controls access to a copyrighted work.

1321060

60.     DCP licenses HDCP, and accordingly controls access to copyright-protected material.

61.     DCP is injured by Defendants' manufacturing, importing, offering to the public, providing, and/or otherwise trafficking in the Circumvention Devices through at least the loss of remuneration from licensing HDCP.

62.     Warner Bros. uses HDCP to protect its copyrighted content from unauthorized access, copying, and use.

63.     Warner Bros. is injured by Defendants' manufacturing, importing, offering to the public, providing, and/or otherwise trafficking in the Circumvention Devices, at least by virtue of the Circumvention Devices' ability to render Warner Bros.' copyrighted content vulnerable to unauthorized access, copying, and use.

64.     Defendants knew or had reason to know the purpose and use of the Circumvention Devices that they manufactured, imported, offered to the public, provided, and/or otherwise trafficked in.  Defendants' actions were willful, and were taken for Defendants' own commercial advantage or private financial gain.  Defendants knew or should have known that their manufacturing, importing, offering to the public, providing, and/or otherwise trafficking in the Circumvention Devices was unlawful.

65.     Defendants' wrongful conduct has caused and will continue to cause Plaintiffs irreparable harm, and Plaintiffs have no adequate remedy at law to redress any continued violations.  Unless restrained by the Court, Defendants will continue to violate the DMCA.

66.     Defendants' violations have injured and will continue to injure Plaintiffs. Plaintiffs are entitled to recover their actual damages and Defendants' profits resulting from

Defendants' wrongful conduct, pursuant to 17 U.S.C. § 1203(c)(2).  Alternatively, Plaintiffs are entitled to statutory damages pursuant to 17 U.S.C. § 1203(c)(3).

67.     Plaintiffs are entitled to injunctive relief pursuant to 17 U.S.C. § 1203(b)(1) and to an Order impounding any materials involved in Defendants' violation of the DMCA pursuant to 17 U.S.C. § 1203(b)(3).

68.     Plaintiffs are also entitled to recover their attorneys' fees and costs of suit pursuant to 17 U.S.C. § 1203.

**COUNT II**
**Violation of the Digital Millennium Copyright Act [17 U.S.C. § 1201(b)(1)]**
**By All Plaintiffs Against All Defendants**

69.     Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 68 of this Complaint as if fully set forth herein.

70.     Defendants were and are actively engaged in the business of manufacturing, importing, offering to the public, providing, and/or otherwise trafficking in the Circumvention Devices.

71.     The Circumvention Devices avoid, bypass, remove, deactivate, or otherwise impair HDCP, a technological measure.

72.     HDCP, in the ordinary course of its operation, prevents, restricts, or otherwise limits activities that violate the rights of a copyright owner under the Copyright Act.

73.     The Circumvention Devices are primarily designed or produced for the purpose of circumventing HDCP, a technological measure that effectively protects a right of a copyright owner under the Copyright Act in a work or a portion thereof.

74.     The Circumvention Devices have no or only limited commercially significant purpose or use other than to circumvent protection afforded by HDCP, a technological measure

1321060

that effectively protects a copyright owner's rights under the Copyright Act in a work or a portion thereof.

75. The Circumvention Devices are marketed by Defendants, or by another or others acting in concert with Defendants and with their knowledge, for use in circumventing protection afforded by HDCP, a technological measure that effectively protects a copyright owner's rights under the Copyright Act in a work or a portion thereof.

76. DCP licenses HDCP, and accordingly controls a technological measure that protects copyrighted content.

77. DCP is injured by Defendants' manufacturing, importing, offering to the public, providing, and/or otherwise trafficking in the Circumvention Devices through at least the loss of remuneration from licensing HDCP.

78. Warner Bros. uses HDCP to protect its copyrighted content from unauthorized access, copying, and use.

79. Warner Bros. is injured by Defendants' manufacturing, importing, offering to the public, providing, and/or otherwise trafficking in the Circumvention Devices at least by virtue of the Circumvention Devices' ability to render Warner Bros.' copyrighted content vulnerable to unauthorized access, copying, and use.

80. Defendants knew or had reason to know the purpose and use of the Circumvention Devices that they manufactured, imported, offered to the public, provided, and/or otherwise trafficked in. Defendants' actions were willful, and were taken for Defendants' own commercial advantage or private financial gain. Defendants knew or should have known that their manufacturing, importing, offering to the public, providing, and/or otherwise trafficking in the Circumvention Devices was unlawful.

1321060

81.     Defendants' wrongful conduct has caused and will continue to cause Plaintiffs irreparable harm, and Plaintiffs have no adequate remedy at law to redress any continued violations.   Unless restrained by the Court, Defendants will continue to violate the Digital Millennium Copyright Act.

82.     Defendants' violations have injured and will continue to injure Plaintiffs. Plaintiffs are entitled to recover their actual damages and Defendants' profits resulting from Defendants' wrongful conduct, pursuant to 17 U.S.C. § 1203(c)(2).   Alternatively, Plaintiffs are entitled to statutory damages pursuant to 17 U.S.C. § 1203(c)(3).

83.     Plaintiffs are entitled to injunctive relief pursuant to 17 U.S.C. § 1203(b)(1) and to an Order impounding any materials involved in Defendants' violation of the Digital Millennium Copyright Act pursuant to 17 U.S.C. § 1203(b)(3).

84.     Plaintiffs are also entitled to recover their attorneys' fees and costs of suit pursuant to 17 U.S.C. § 1203.

### COUNT III
**Copyright Infringement [17 U.S.C. § 106 *et seq.*]**
**By Warner Bros. Against All Defendants**

85.     Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 84 of this Complaint as if fully set forth herein.

86.     Warner Bros. owns numerous copyright registrations in its Home Entertainment Products.   These copyright registrations are in full force and effect and are enforceable by Warner Bros.

87.     Defendants know or have reason to know that the Circumvention Devices enable HDCP-protected Home Entertainment Products to be displayed on non-HDCP devices such that

users of the Circumvention Devices can engage in unauthorized copying, in violation of Warner Bros.' copyrights.

88.    By offering for sale the Circumvention Devices to actual and potential purchasers for use in enabling HDCP-protected Home Entertainment Products to be displayed on non-HDCP devices, Defendants have induced, caused, and/or materially contributed to the infringing conduct of Defendants' customers.

89.    Defendants' inducement of infringement of Warner Bros.' copyrights in its Home Entertainment Products is, and continues to be, intentional, willful, and in conscious disregard of Warner Bros.' rights.

90.    Defendants have realized profit by virtue of their inducement of infringement of Warner Bros.' copyrights.

91.    Warner Bros. has sustained economic damages as a result of Defendants' inducement of infringement of Warner Bros.' copyrights in an amount to be proven at trial.

92.    Warner Bros. is entitled to recover the actual damages it has suffered and/or any profits gained by Defendants that are attributable to Defendants' acts of copyright infringement pursuant to 17 U.S.C. § 504(b).  Alternatively, Warner Bros. is entitled to the maximum statutory damages allowed under 17 U.S.C. § 504(c) based on Defendants' willful acts of copyright infringement.

93.    Warner Bros. is entitled to an injunction pursuant to 17 U.S.C. § 502 against Defendants' continued marketing, distribution, sales, and/or offers for sale of the Circumvention Devices.

94.    Warner Bros. is also entitled to recover its full costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

1321060

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.      A declaration that Defendants' unauthorized importing, offering for sale, providing, and/or otherwise trafficking in the Circumvention Devices violates 17 U.S.C. § 1201(a)(2) and (b)(1), and that such violation was committed willfully and for the purpose of Defendants' direct or indirect commercial advantage and/or private financial gain;

2.      A preliminary and permanent injunction pursuant to 17 U.S.C. §§ 1203 and 502 enjoining Defendants, their agents, servants, and employees, and all those in active concert or participation with Defendants, from:

    a.  importing, manufacturing, offering to the public, providing, or otherwise trafficking in any technology, product, service, device, component, or part thereof, including the Circumvention Devices, that is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to copyrighted content and that effectively protects content owners' rights as copyright owners;

    b.  importing, manufacturing, offering to the public, providing, or otherwise trafficking in any technology, product, service, device, component, or part thereof, including the Circumvention Devices, that have only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to copyrighted content and that effectively protects contents owners' rights as copyright owners;

    c.  importing, manufacturing, offering to the public, providing, or otherwise trafficking in any technology, product, service, device, component, or part

1321060

thereof, including the Circumvention Devices, that is marketed by Defendants or others acting in concert with Defendants with Defendants' knowledge for use in circumventing a technological measure that effectively controls access to copyrighted content and that effectively protects content owners' rights as a copyright owner; and

    d.   marketing, selling, importing, supplying, or otherwise providing any product, device, or component thereof, including the Circumvention Devices, that contributes to or induces the copying of Warner Bros.' Home Entertainment Products;

3.    An Order pursuant to 17 U.S.C. § 1203(b) providing for the seizure, impoundment, and ultimate destruction of all Circumvention Devices within Defendants' custody or control;

4.    An Order pursuant to 17 U.S.C. § 503 providing for the seizure, impoundment, and ultimate destruction of all Circumvention Devices within Defendants' custody or control, and for the seizure and impoundment of all records documenting the manufacture, sale, or receipt of Circumvention Devices;

5.    An Order requiring Defendants to file with the Court and serve upon Plaintiffs within ten (10) days after the issuance of any injunction a written report, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

6.    An award of damages, pursuant to 17 U.S.C. § 1203(c), of Plaintiffs' actual damages and any additional profits earned by Defendants as a result of Defendants' sale or distribution of Circumvention Devices, or of statutory damages, in an amount to be determined by the Court, for each Circumvention Device sold and/or distributed by Defendants;

1321060

7.      An award of prejudgment and post-judgment interest;

8.      An award of attorneys' fees and costs pursuant to 17 U.S.C. § 1203(b); and

9.      Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury as to all issues triable by a jury in this action.

Dated: December 19, 2012

Of Counsel:

Hillary Brooks (pending *phv* admission)
**MARGER JOHNSON**
  **& MCCOLLOM PC**
210 SW Morrison Street, Suite 400
Portland, OR 97204
Telephone: (503) 222-3613
Facsimile: (503) 274-4622

By: /s/ Steven M. Auvil

Steven M. Auvil (Ohio Bar No. 0063827)
Steven.Auvil@squiresanders.com
Rebecca W. Haverstick (Ohio Bar No. 0066996)
Rebecca.Haverstick@squiresanders.com
**SQUIRE SANDERS (US) LLP**
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114
Telephone: (216) 479-8023
Facsimile:  (216) 479-8780

David Elkins (pending *phv* admission)
David.Elkins@squiresanders.com
**SQUIRE SANDERS (US) LLP**
600 Hansen Way
Palo Alto, California 94304
Telephone: (650) 856-6500
Facsimile: (650) 843-8777

Attorneys for Plaintiffs
DIGITAL CONTENT PROTECTION, L.L.C. and
WARNER BROS. ENTERTAINMENT INC.

1321060